IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CLOVIS DANIEL MORTON                                    PLAINTIFF

V.                                              NO: 1:22-CV-065-GHD-DAS

THE CITY OF CORINTH, MISSISSIPPI; et
al.                                                    DEFENDANTS

MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Presently before the Court is a Motion for Judgment on the Pleadings [79] filed by

Defendants City of Corinth, Mississippi, Ralph Dance, Ram Mares, Sean Strickland, Matt Wood,

Naomi Carmichael, Bo Swindel, Mark Luker, and Jerry Rogers (collectively "municipal

defendants"). Plaintiff Morton has responded in opposition to the present motion. Upon due

consideration of the motion and the applicable authority, the Court hereby grants in part and denies

in part the municipal defendants' Motion for Judgment on the Pleadings [79].

**Factual Background**

On November 2, 2020, Plaintiff Morton, age seventy-three (73) at the time, went to the

Corinth Police Department to purchase and pick up a copy of a collision report for a motor vehicle

collision involving his wife. Morton parked in a handicap parking space at the Corinth Police

Department due to his disabilities, as he required the use of a cane. Morton, after acquiring the

collision report, returned to his vehicle and reviewed the report for a few minutes. Following this,

Morton then exited the parking space and began to leave the police department.

As Morton was attempting to exit the parking lot, a vehicle, later determined to be an

unmarked police vehicle, was blocking the exit route. According to the complaint, the lanes

entering and exiting the parking lot are wide enough for two vehicles, however, Morton did not

use the entrance lane and instead waited behind the vehicle for the exit lane to clear. During this

time, the driver of the vehicle was speaking to someone through the window. After several minutes of waiting for the vehicle blocking the exit lane to leave, Morton blew his vehicle's horn to alert the driver in front of him that he needed to exit the parking lot.

According to the complaint, immediately after Morton blew his horn, the driver of the vehicle blocking the exit lane put his vehicle in park. The individual in the vehicle, later determined to be Detective Ram Mares of the Corinth Police Department, then exited the vehicle and approached Morton's vehicle. Detective Mares was allegedly dressed in civilian clothing, and as he approached Morton's vehicle, Morton began to open his door as he was fearful that Detective Mares was aggressive and hostile. Morton alleges that Detective Mares grabbed the half-opened door, grabbed Morton violently, slammed the door striking Morton's knees, and then attempted to remove Morton from the vehicle.

During Detective Mare's attempted removal of Morton from his vehicle, another man, Officer Sean Strickland, began to assist Detective Mares and the two removed Morton from his vehicle and placed Morton in handcuffs. Morton was then transported to the Alcorn County Detention Center, and according to the complaint, Morton was stripped naked, put in a cell, and denied access to his insulin medicine. Morton was charged with resisting arrest and disorderly conduct, but these charges were later dismissed by a Municipal Court Judge who found that there was insufficient proof to support the charges.

At this current stage of proceedings, Morton is pursuing an ADA claim, a First Amendment retaliation claim, a Fourth Amendment seizure claim, and a Fourth Amendment excessive force claim. Further, Morton has voluntarily dismissed Matt Wood, Naomi Carmichael, Bo Swindel, and Jerry Rogers from this matter.

2

## Standard

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is governed by the same standards as a Rule 12(b)(6) motion. *See Brown v. CitiMortgage, Inc.*, 472 Fed. App'x. 302, 303 (5th Cir. 2012) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)). "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 509–10 (1990)).

When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). "[A plaintiff's] complaint therefore 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010)

(internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez– Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

## Discussion

### I. The Plaintiff's Reckless Disregard Claim

The Court first addresses count one of the complaint, Plaintiff's state law claim brought pursuant to the Mississippi Tort Claims Act ("MTCA"). Plaintiff Morton clarifies that the only claim based upon the MTCA is a claim of reckless disregard against Defendants Mares, Strickland, Dance, and Luker. At the outset, the Court dismisses Morton's reckless disregard clam because "Mississippi does not recognize reckless disregard as an independent tort." *Quinn v. Webster County, Mississippi*, 2023 WL 2731037, at *7 (N.D. Miss. Mar. 30, 2023) (citing *Hodges v. Allstate Ins. Co.*, 2022 WL 766452, at *4 (S.D. Miss. Mar. 11, 2022). To the extent Morton asserts reckless disregard as a separate independent cause of action, it is therefore hereby dismissed. As outlined in the complaint and as clarified in Plaintiff's briefing, the claim of reckless disregard is the only state law claim being asserted in this action, and the Court will now move to Plaintiff's claims brought under federal law.

### II. Qualified Immunity

As to the Court's analysis of Plaintiff's constitutional violation claims, Defendant Mares and Defendant Strickland have asserted that they are entitled to qualified immunity. "Qualified

4

immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Waddell v. Voyles*, 2021 WL 1208497, at *4 (N.D. Miss. Mar. 30, 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009)). "The defense of qualified immunity may be successfully invoked by a police officer 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Cantu v. Rocha*, 77 F.3d 795, 805-06 (5th Cir. 1996)). "Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available." *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

"To determine whether a public official is entitled to qualified immunity, [courts] decide '(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct.'" *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (quoting *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011)) (additional citation omitted). Notably, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).

The Court will address each constitutional violation claim in turn along with a qualified immunity analysis of each.

5

### III.    First Amendment Retaliation

Morton's claim of First Amendment retaliation is brought under 42 U.S.C. Section 1983. Morton asserts that Defendants City of Corinth, Dance, Mares, Strickland, and Luker are liable for this claim, and that the other named defendants in this count have been voluntarily dismissed. This claim is based on the Plaintiff asserting that honking his vehicle horn in the Corinth Police Department parking lot was protected speech directed towards the defendants and that because of this speech, Morton was retaliated against with an attack and arrest by Defendants Mares and Strickland. It is unclear how any other defendants besides Mares and Strickland are involved, as the Plaintiff states that they were the only two defendants present during the honking, the attack, and the arrest. Therefore, the Court will only analyze Plaintiff's First Amendment Retaliation claim as to Defendants Mares, Strickland, and the City of Corinth.

To state a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in constitutionally protected activity; (2) the defendants' actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir.2005) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir.2002)). Also, the Fifth Circuit has held that to prevail on a First Amendment retaliation claim, a plaintiff must plead and prove the absence of probable cause. *Roy v. City of Monroe*, 950 F.3d 245 (5th Cir. 2020) (citing *Nieves v. Bartlett*, 587 U.S. 391, 139 S. Ct. 1715, 1725, 204 L.Ed.2d 1 (2019)).

Defendants argue that honking a vehicle's horn is not protected speech nor is it a matter of public concern in this situation. The Court notes that some courts have determined that honking a vehicle horn could be expressive conduct or speech under the First Amendment. *Porter v. Gore*,

6

517 F. Supp. 3d 1109, 1125 (S.D. Cal. 2021); *Mitchell v. Maryland Motor Veh. Admin.*, 450 Md. 282, 309, 148 A.3d 319 (2016). The Court looks to whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). As it appears to the Court, honking a vehicle horn can certainly constitute expressive conduct and speech as conveying a message to another driver or person.

The next inquiry is whether this speech was on a matter of public concern. The First Amendment protects those engaged in speech which can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011); citing *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Deciding whether speech is of public or private concern requires the Court to examine the "content, form, and context" of the speech throughout the "whole record." *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011). Morton has alleged that the honking was a matter of public concern as the vehicle blocking the exit was on public property. The Court, at this stage, concludes after reviewing the content, form, and context of the speech that Morton has sufficiently alleged that the speech was of public concern as it concerned the use of public property and public roadways.

Further, Morton has alleged that the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity and that the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. Morton alleges that it was immediately after honking his horn that he was aggressively approached by Defendant Mares and that the attack from both Defendant

Mares and Defendant Strickland occurred immediately after the officers reached the Plaintiff's vehicle.

Also, the Court finds that Morton has presented sufficient allegations that when taken as true show that a lack of probable cause existed for his arrest after honking his horn. According to the complaint, Morton honked his horn as allowed under Mississippi law to ensure safe operation, provide notice, and a warning that the other vehicle was blocking a public street or highway from access. "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996). According to the Defendants, Morton violated Miss. Code § 97-35-7(1)(a); City of Corinth Code of Ordinances § 21-1, which makes unlawful the failure to obey a law enforcement officer's command; Miss. Code § 97-35-7; City of Corinth Code of Ordinances § 21-16, which makes unlawful resisting or obstructing arrest; Mississippi Code § 97-35-13, which makes unlawful disturbing the peace, and Mississippi Code § 63-7-65(1), which makes unlawful honking a vehicle horn except when reasonably necessary to ensure safe operation.

The Court concludes that Morton's allegations, taken as true, are sufficient to demonstrate that a reasonable person could conclude that Morton had not committed an offense. Under the totality of the circumstances, given Morton's allegations that it was apparent that the honk was a simple notice to explain that the exit was being blocked, the Court concludes that Morton has sufficiently alleged a lack of probable cause for the initial encounter. Further, Morton alleges that an officer in street clothes, who was unknown to be an officer at the time, aggressively approached Morton's car. According to the complaint, Morton opened the door in an attempt to exit the vehicle, Detective Mares did not identify himself, and Morton was then attacked and arrested.

8

Taking Morton's allegations as true, he was unaware that the defendants removing him from his vehicle were law enforcement officers and there was no resistance to the arrest. Given that Morton's complaint alleges that he was a handicapped seventy-three (73) year old man who needed a cane to walk, a reasonable officer could understand that there was no true resistance to the arrest.

As stated above, Defendant Mares and Defendant Strickland have asserted the defense of qualified immunity. To overcome this defense, Morton must show that the defendants violated his rights and that those rights were "clearly established" at the time of the violation. *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016). For a right to be clearly established, it must be "beyond debate" that the defendant's conduct was unlawful. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). The Court has already discussed that Morton has sufficiently alleged facts that demonstrate that his rights under the First Amendment were violated, and this leads to the next inquiry as to whether those rights were clearly established at the time of the violation.

A constitutional right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6, 142 S.Ct. 4, 211 L.Ed.2d 164, (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015)) (internal quotation marks omitted). "Rights are 'clearly established' when 'existing precedent squarely governs the specific facts at issue,' ... not when a rule is merely 'suggested by then-existing precedent' ...." *Henderson v. Harris Cnty., Texas*, 51 F.4th 125, 132 (5th Cir. 2022), cert. denied sub nom. *Henderson v. Harris Cnty.*, —— U.S. ——, 143 S. Ct. 2661, 216 L.Ed.2d 1237 (2023) (internal citations omitted). A case directly on point is not required for a right to be clearly established, but "existing precedent must have placed the ... constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 78–79, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017) (internal quotation marks omitted). Whether Morton's alleged

speech of honking his horn was in fact protected speech or whether it was of public concern is not beyond debate.

The Court finds that there is an absence of case law which addresses Plaintiff Morton's theory of protected public speech. The Court acknowledges that some other, non-precedential, courts have found that honking a horn can be considered protected, public speech, however, there is certainly not precedent beyond debate for the theory argued in this matter. Plaintiff Morton's arguments, without more, do not place this First Amendment constitutional question beyond debate. Therefore, the individual defendants could not have been expected to conclude that Morton's honking of his vehicle's horn was constitutionally protected public speech, and thus, Defendants Mares and Strickland are entitled to qualified immunity as to this First Amendment retaliation claim.

## IV.    False arrest, false imprisonment, and unreasonable seizure claims

Next, the Court addresses Morton's claim that the Defendants violated his right to be free from unreasonable seizure, false arrest, and false imprisonment under the Fourth Amendment. The Fourth Amendment protects the right to be secure from unreasonable seizures. U.S. Const. amend. IV. To state a claim under § 1983 for unreasonable seizure, the Plaintiff must demonstrate that (1) he was seized within the meaning of the Fourth Amendment and (2) such seizure was unreasonable. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). Again, Morton has asserted these claims against Defendants City of Corinth, Mares, Strickland, Dance, and Luker. In order to assert a valid claim against an official in his individual capacity, a § 1983 claimant must establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation. *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) (quoting *James v.*

10

*Texas Collin County*, 535 F.3d 365, 373 (5th Cir.2008)).  Here, Morton has merely made the boilerplate allegation that Defendants Luker and Dance were present only after the arrest, and that they approved the other Defendants' actions.  These allegations are not enough, even when taken as true, to sustain these claims against them, and thus, these claims of unreasonable seizure, false arrest, and false imprisonment under the Fourth Amendment are dismissed as to Defendants Luker and Dance.

It is undisputed that Morton, who was arrested, was seized for purposes of the Fourth Amendment. *See, e.g., United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). With regard to the reasonableness of his arrest, "the general rule [is] that [such a] Fourth Amendment seizure[ ] [is] reasonable only if based on probable cause." *Bailey v. United States*, 568 U.S. 186, 192, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013) (internal quotations and citation omitted).  If probable cause exists, the claim fails.  *See Clark v. Thompson*, 850 Fed.Appx. 203, 210 (5th Cir. 2021) ("The 'constitutional torts' of false arrest, unreasonable seizure, and false imprisonment also require a showing of no probable cause." (quoting *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)).

Similarly, for Morton to prevail on his false arrest claim, he "must sufficiently allege (1) that he was arrested, and (2) the arrest did not have the requisite probable cause." *Rhodes v. Prince*, 360 F. App'x 555, 558 (5th Cir. 2010) (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004)).  Accordingly, to establish a constitutional violation of his Fourth Amendment right to be free from false arrest and from unreasonable seizure, Morton must show that there was no probable cause to arrest him. *See Haggerty*, 391 F.3d at 655–56.  If Morton's arrest was supported by probable cause, his claims fail under the Fourth Amendment before even considering the

Defendants' qualified immunity defense. As discussed above, the Court finds that Morton has sufficiently alleged facts that demonstrate a lack of probable cause for his arrest.

Morton also alleges a Section 1983 claim based upon false imprisonment in violation of the Fourth Amendment. Although this is styled as an individual claim from the false arrest and unreasonable seizure claim, the same analysis applies. Recently, the Fifth Circuit analyzed an unlawful arrest claim and false imprisonment claim under the same standard. *See Johnson v. City of San Antonio*, 2023 WL 3019686, at *8 (5th Cir. 2023) (citing *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001)) ("To succeed on her unlawful arrest and false imprisonment claims, Roberts must show that there was not even arguably probable cause for her arrest."). The Court has already determined that Morton has stated a claim for false arrest and unreasonable seizure, and thus, this claim of false imprisonment survives for the same reasoning.

Defendant Mares and Defendant Strickland have asserted the defense of qualified immunity as to Plaintiff Morton's Fourth Amendment false arrest, false imprisonment, and unreasonable seizure claims. As stated earlier, to overcome this defense, Morton must show that the defendants violated his rights and that those rights were "clearly established" at the time of the violation. *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016). Morton has sufficiently alleged in the complaint that his Fourth Amendment rights were violated as discussed above, and the Court turns to whether the constitutional rights in question were clearly established at the time of the relevant events in this case. The Fifth Circuit held in 2009 that "[t]he Fourth Amendment right to be free from false arrest – arrest without probable cause – was clearly established ...." *Club Retro, L.L.C. v. Hilton*, 586 F.3d 181, 207 (5th Cir. 2009) *See, e.g., Gerstein v. Pugh*, 420 U.S. 103, 111–12, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir.1988). Further, "the law is well settled that there is a constitutional right under the Fourth

12

Amendment to be free from ... false imprisonment ...." *Texas Serenity Academy, Inc. v. Glaze*, 2013 WL 4459152 at \*6 (S.D. Tex. August 15, 2013) (citing *Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir. 1999). The Fifth Circuit has also held that there is a clearly established right to be free from unreasonable seizures. *Heaney v. Roberts*, 846 F.3d 795, 805 (5th Cir. 2017).

Nonetheless, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Mendenhall v. Riser*, 213 F.3d 226, 230, (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)) (other quotation marks and citations omitted). Thus, the Plaintiff must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrest. *See Babb v. Dorman*, 33 F.3d 472, 478 (5th Cir.1994); *see also Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir.2005).

"Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Lockett v. New Orleans City*, 607 F.3d 992, 998 (5th Cir. 2010) (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001)).

Again, according to the Defendants, Morton violated Miss. Code § 97-35-7(1)(a); City of Corinth Code of Ordinances § 21-1, which makes unlawful the failure to obey a law enforcement officer's command; Miss. Code § 97-35-7; City of Corinth Code of Ordinances § 21-16, which makes unlawful resisting or obstructing arrest; Mississippi Code § 97-35-13, which makes unlawful disturbing the peace, and Mississippi Code § 63-7-65(1), which make unlawful honking

13

a vehicle horn except when reasonably necessary to ensure safe operation. According to the complaint, Morton pulled his vehicle behind Defendant Mare's vehicle and waited for several minutes so that he could exit the parking lot. After waiting for a few minutes, Morton then honked his horn to signal to Defendant Mares that the exit was being blocked by his vehicle, and Defendant Mares then immediately aggressively approached the Plaintiff's vehicle. Morton states that he was then attacked by both Defendant Mares and Defendant Strickland, pulled from his vehicle, and arrested. Following these alleged facts, the officers would not have probable cause to arrest Plaintiff Morton for honking his horn when according to the facts alleged, it would have been obvious to the officers that the horn was being used in a legal manner to ensure safe operation, not for any unlawful purpose such as disturbing the peace. The individual officers are therefore not entitled to qualified immunity for these claims at the motion to dismiss stage.

The Defendants have also asserted that the independent-intermediary doctrine applies, which holds generally that "[i]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party. *See Anokwuru v. City of Houston*, 990 F.3d 956, 963 (5th Cir. 2021). The Plaintiff alleges that the Defendants knowingly or with reckless disregard for the truth provided false information to secure the arrest warrant. *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 2684 57 L.Ed.2d 667 (1978). The chain of causation remains intact if "it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant[s]." *Hand v. Gary,* 838 F.2d 1420, 1428 (5th Cir.1988). To determine taint, the essential inquiry is whether "there remains sufficient content in the warrant affidavit to support a finding of probable cause" after the "material that is the subject of the alleged falsity or reckless disregard is set to one side." *Franks*, 438 U.S. at 171–72, 98 S. Ct. at 2684.

According to the facts of the complaint and the arguments of Plaintiff Morton, while viewing them in the light most favorable to the Plaintiff, the "corrected" version of the affidavit would be insufficient to establish probable cause for arrest based on honking a car horn and resisting arrest. The independent-intermediary doctrine therefore does not apply. This claim shall therefore proceed.

## V. Excessive Force

The Court next addresses Morton's claim that the Defendants violated his Fourth Amendment rights through the use of excessive force. Claims of excessive force used by law enforcement officials "in the course of making an arrest, investigatory stop, or other 'seizure' of [a plaintiff's] person ... are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). When a plaintiff asserts claims for both unlawful arrest and excessive force, the Court must "analyze the excessive force claim without regard to whether the arrest itself was justified." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir.2009) (quoting *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir.2007)).

"[T]o state a violation of the Fourth Amendment prohibition on excessive force, the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 500–01 (5th Cir.2008) (citing *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir.2004)). "The objective reasonableness of the force ... depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." *Id.* (citing *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir.1996)). "Specifically, the court should consider 'the severity of the crime at issue, whether the suspect poses an immediate threat

to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865).

Morton alleges that Defendants City of Corinth, Dance, Mares, Strickland, and Luker, are liable for the violation. It is clear that Morton alleges Detective Mares and Officer Strickland were involved in the alleged excessive force, however, it is not clear how the remaining individual defendants were involved. Morton appears to state that the other individual defendants knew of the attack after the fact but did nothing to stop it. It is not alleged that they were present during the excessive force allegations or personally involved or engaged in the excessive force as required under Section 1983. *Turner v. Lieutenant Driver*, 848 F.3d 678, 695–96 (5th Cir. 2017); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). Therefore, the excessive force claims against Defendants Dance and Luker are dismissed.

The Court first inquires into whether Morton has sufficiently alleged the first element of an excessive force claim, which is an injury. Morton need not allege a significant injury for an excessive force claim, however, he must allege an injury that is "more than de minimis." See *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (holding that pain and bruising on the arrestee's wrists from handcuffing were de minimis injuries and could not support an excessive force claim). Temporary pain without lasting effect allegedly suffered while an officer attempted to control an arrestee who had already attempted to flee is a de minimis injury. *See Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017); *see also Brooks v. City of W. Point, Miss.*, 639 F. App'x 986, 990 (5th Cir. 2016) (abrasions to the hands and knees, some pain in the back and neck, and unspecified problems with asthma were de minimis). However, "as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological

injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (quoting *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013)).

Morton repeatedly describes his physical injuries as significant, however, there is only a vague description of the specifics of the injuries. The complaint states that Plaintiff's knees were struck by the car door, the Plaintiff was placed in an arm bar, and the Plaintiff was handcuffed which injured his shoulders. Further, Morton alleges that he suffers psychological injuries in that he suffers from visions of the arrest, which he describes as an attack. While the complaint generally outlines the injuries suffered by Morton as minor, they are not so minor so that the excessive force claim fails on this point. *Buehler v. Dear*, 27 F.4th 969, 982 (5th Cir. 2022).

The Court must determine that when taking the allegations in the complaint as true if the force used in the arrest of Morton was both clearly excessive to the need, and whether it was objectively unreasonable for Defendants Mares and Strickland to use that amount of force. "The permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee.". *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). According to the complaint, Morton was a seventy-three-year-old disabled man, unarmed in his vehicle, not resisting arrest, and not engaged in any criminal conduct. Following the honking of his horn to provide notice to the vehicle in front of him that he was unable to leave, two law enforcement officers struck his knees with the vehicle door, pulled him from his vehicle, placed him in an arm bar, handcuffed him, and denied him access to his cane. The Court finds under these circumstances as provided by the Plaintiff, a reasonable officer would know that striking Morton's knees, pulling him from the vehicle, and

placing him in an arm bar, all while Morton did not resist would be excessive to the need and objectively unreasonable.

The individual Defendants, Mares and Strickland, have also asserted the defense of qualified immunity for Plaintiff's excessive force claim. Plaintiff Morton has sufficiently alleged that the constitutional violation of excessive force took place. Further, It has been clearly established that "violently slam[ming] an arrestee who is not actively resisting arrest" is a constitutional violation. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018) (citing *Ramirez v. Martinez*, 716 F.3d 369, 377-78 (5th Cir. 2013)); see *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (holding that, as of 2013, the law was clearly established that "an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation"). Passive resistance does not allow an officer to deploy violent force. *Deville*, 567 F.3d at 167-68 (denying qualified immunity after officer stopped a woman for a minor traffic violation and, when met with passive resistance at most, proceeded to pull her out of the car and slam her against the vehicle).

Plaintiff Morton has alleged that he was grabbed violently by Defendant Mares and hit in his knees with his own car door when Officer Mares slammed it. Another Defendant, Officer Strickland, then began to assist in removing and arresting the Plaintiff, placing him in an arm bar. Morton has alleged that he did not resist arrest whatsoever and that the claim of him resisting is completely unfounded. The Complaint also outlines facts that Morton posed no threat whatsoever to the officers and that the attack on him was violent and unnecessary under the circumstances.

18

Therefore, the individual Defendant officers are not entitled to qualified immunity at this stage of the proceedings.

## VI.    Claims against the City of Corinth

The City of Corinth has been named as a liable party in Morton's claims of a First Amendment retaliation, unreasonable seizure, false arrest, and false imprisonment under the Fourth Amendment, and excessive force under the Fourth Amendment.  Under *Monell* and its progeny, a municipality may only be held liable under Section 1983 for violating a citizen's constitutional rights if "the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359, 179 L.Ed.2d 417 (2011); *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

To establish constitutional liability under *Monell*, a plaintiff must demonstrate (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247-249 (5th Cir. 2003). A "policy or custom" can be either (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *McGregory v. City of Jackson*, 335 Fed. App'x 446, 448-449 (5th Cir. 2009).

"Boilerplate allegations of municipal policy, entirely lacking in any factual support that a municipal policy does exist, are insufficient.'" *Vess v. City of Dallas*, 2022 WL 625080, *5 (N.D.

Tex. Mar. 3, 2022). Here, Morton does just that by only making boilerplate allegations that two policy makers of the City of Corinth were present after the arrest of Morton took place and that these policy makers approved the other defendants' actions. Further, Morton has not alleged any facts that support the existence of an unlawful custom or practice or a failure-to-train. He has not identified any policy or custom of which a policymaker can be charged with actual or constructive knowledge, let alone has Morton alleged that such policy or custom was the "moving force' behind his alleged unlawful arrest. Given the failure to provide any factual allegations that would support municipal liability of the City of Corinth for the Section 1983 claims, the Court holds that these claims should be dismissed as to the City of Corinth.

## VII.    Official Capacity claims

Further, Morton has asserted each of these claims against the remaining individual defendants, Mares and Strickland, in both their official and individual capacity. The claims as to their individual capacity liability are discussed above, and the Court now addresses liability in their official capacity. A § 1983 claim against an officer in his official capacity are properly regarded as to a claim against the municipality itself. Given that official capacity claims are to be considered against the City itself, the Court must accordingly consider them together. The Court has previously determined that the Plaintiff has failed to state a plausible claim against the City of Corinth, and thus, the Court must find the same as to the individual defendants in their official capacity. Morton's claims against the individual defendants in their official capacity are therefore due to be dismissed.

## VIII.    ADA Failure to Accommodate Claims

The last claim brought by Morton to now be addressed by the Court is a claim under the Americans with Disabilities Act for failure to accommodate. Morton alleges that the City of

Corinth, Mississippi, who is the only defendant party as to these claims, failed to accommodate Morton by refusing access to his assistive cane device. Plaintiff asserts that he repeatedly communicated his need for the cane but was still deprived of its use and that he was denied access to his insulin.

To succeed on a failure-to-accommodate claim under the public services provision of the ADA, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered public entity; and (3) the entity failed to make reasonable accommodations. Americans with Disabilities Act of 1990 §§ 201, 203, 42 U.S.C.A. §§ 12131(1)(A)-(B). The ADA defines public entities to include local governments and their instrumentalities, 42 U.S.C. § 12131(1)(A)-(B). "To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015). Plaintiffs ordinarily satisfy the knowledge element by showing that they identified their disabilities as well as the resulting limitations to a public entity or its employees and requested an accommodation in direct and specific terms. *Windham v. Harris County, Texas*, 875 F.3d 229, 237 (5th Cir. 2017). "When a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that 'the disability, resulting limitation, and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents." *Id.* (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)).

It appears undisputed that Morton has alleged his qualification under the ADA; however, the remaining elements are disputed as to whether they have been sufficiently alleged. According to the complaint, Morton repeatedly requested, or "begged," for his cane but was denied access.

Morton further asserts that the disability would have been obvious due to him falling to the ground and being unable to stand after being pulled out of his vehicle. While the parties seem to dispute the issues of fact surrounding this claim, the Court is strictly concerned with whether Morton has sufficiently stated a plausible ADA failure to accommodate claim against the City of Corinth. Following the allegations in the complaint, the Court concludes that Morton has in fact stated a claim of ADA failure to accommodate against the City of Corinth with regard to his need for a cane.

Morton also asserts a separate ADA failure to accommodate claim against the City of Corinth due to the fact that Morton was deprived of his insulin while he was in jail. At this juncture, prior to the commencement of discovery and taking all well-pled facts in the light most favorable to the Plaintiff, the Court finds that Morton has sufficiently stated a plausible ADA failure to accommodate claim against the City of Corinth with respect to his need for insulin. He alleges in his Amended Complaint that he "specifically identified his disabilities and the resulting limitations and directly and specifically requested his necessary accommodation" and he specifically mentions his need for insulin. [70, at p. 37]. At the present juncture, the Court finds that these allegations are sufficient to permit the Plaintiff's ADA claim regarding insulin to proceed against the City of Corinth. Accordingly, the Defendants' motion with respect to the Plaintiff's claims under the ADA shall be denied.

### IX. Dismissed Claims / Parties

The Plaintiff has voluntarily dismissed the remaining Section 1983 claims including Count Two (B): Fourteenth Amendment Violations; Count 4: Denial of Medical Treatment; Count 5: Wrongful Arrest; Count 6: Monell - Failure to Train - Excessive Force; Count 7: Monell Claim – Failure to Train – Wrongful Arrest; Count 8: Monell Claim – Conspiracy to Conceal Misconduct;

and Count 9 - Monell Claim – Denial of Medical Care and Humiliation. Accordingly, the Plaintiff has voluntarily dismissed Defendant Matt Wood, Defendant Naomi Carmichael, Defendant Bo Swindel, and Defendant Jerry Rogers. Further, the Plaintiff has failed to allege any facts demonstrating the personal involvement or a constitutional violation of Defendant Ralph Dance, and thus, the claims against Defendant Ralph Dance are dismissed.

## Conclusion

For the reasons stated above, the Court finds that Defendants City of Corinth, Mississippi, Ralph Dance, Ram Mares, Sean Strickland, Matt Wood, Naomi Carmichael, Bo Swindel, Mark Luker, and Jerry Rogers' Motion for Judgment on the Pleadings [79] is GRANTED IN PART and DENIED IN PART.

An order in accordance with this opinion shall issue this day.

This, the ____ day of July, 2024.

SENIOR U.S. DISTRICT JUDGE