IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CLOVIS DANIEL MORTON                                           PLAINTIFF

V.                                                    NO: 1:22-CV-065-GHD-DAS

THE CITY OF CORINTH, MISSISSIPPI; et
al.                                                                      DEFENDANTS

<u>MEMORANDUM OPINION</u>

Presently before the Court is a Motion for Summary Judgment [178] filed by the sole remaining Defendant Ram Mares. The Plaintiff has responded in opposition. Upon due consideration of the motion and the applicable authority, the Court hereby grants Mares' motion and dismisses the Plaintiff's remaining claims.

**Factual Background**

On November 2, 2020, the Plaintiff Clovis Daniel Morton, age seventy-three (73) at the time, went to the Corinth Police Department to purchase and pick up a copy of a police report for a motor vehicle collision involving his wife. [Amended Complaint, Doc. 152, at p. 2]. Morton parked in a handicap parking space at the entrance to the Corinth Police Department ("CPD"). [152, at p. 2]. Morton, after acquiring the collision report, returned to his vehicle and reviewed the report for a few minutes. [Morton Dep., Doc. 183-1, at p. 81; Video of Incident, Doc. 180].

During the time Morton was sitting in his vehicle reviewing the report, a civilian vehicle driven by the Defendant Ram Mares, a Detective with the Corinth Police Department, entered on one side of the parking lot. He stopped in the right exit lane of the two-lane parking lot to assist a woman whose vehicle had been seized. [180]. While Mares was stopped, Morton backed his vehicle out of his parking place and pulled his vehicle behind Mares' vehicle, which was still stopped in the exit lane. [180]. Although the lanes entering and exiting the parking lot are wide

enough for two vehicles, Morton did not use the entrance lane to go around Mares' vehicle and exit the parking lot, nor did he exit the parking lot in the other direction, which was also an option for him; instead, Morton began blowing his vehicle's horn at Mares. [180].

Immediately after Morton blew his horn, Mares exited his vehicle and approached Morton's vehicle. [180]. Mares was wearing a black CPD logo quarter-zip shirt, a visible CPD badge, and an open-carry holster and firearm. [180]. As Mares approached Morton's vehicle, Morton began to open his door and curse at Mares. [183-1, at p. 103]. Mares grabbed the half-opened door, exchanged words with Morton, shut the door with Morton still in the vehicle, and began walking back towards his own vehicle. [183-1, at pp. 103-107]. Morton then opened his vehicle's door again as the vehicle rolled forward toward Mares and his vehicle. [183-1, at 109-111]. Mares then approached Morton's vehicle again and told Morton to exit. [183-2, at pp. 12, 20]. Morton refused and resisted Mares' attempts to remove him from the vehicle. [183-1, at p. 114].

During Detective Mares' attempted removal of Morton from his vehicle, another CPD Officer, Sean Strickland, began assisting Mares [183-1, at p. 115]. The two removed Morton from his vehicle and placed him in handcuffs. [183-1, at p. 115]. Morton was then transported to the Alcorn County Detention Center and charged with resisting arrest and disorderly conduct. [152-2]. The charges were later dismissed by a Municipal Court Judge who found there was insufficient proof to support the charges. [152-2].

This litigation followed and two claims remain pending, both solely against Mares: malicious prosecution and false arrest, both under the Fourth and Fourteenth Amendments. Mares has filed the instant motion for summary judgment, which Morton opposes.

2

## Summary Judgment Standard

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

**Discussion**

The Defendant Mares asserts he is entitled to qualified immunity as to the Plaintiff's two claims. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Waddell v. Voyles*, 2021 WL 1208497, at *4 (N.D. Miss. Mar. 30, 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009)). "The defense of qualified immunity may be successfully invoked by a police officer 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Cantu v. Rocha*, 77 F.3d 795, 805-06 (5th Cir. 1996)). "Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available." *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

"To determine whether a public official is entitled to qualified immunity, [courts] decide '(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct.'" *Doe as Next Friend Doe v. Jewell*, -- F.4th –, 2025 WL 2374899, at *3-*4 (5th Cir. Aug. 15, 2025); *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019); *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (quoting *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011)). Crucially, a plaintiff's inability to establish an underlying constitutional violation forecloses any chance of recovery against an individual defendant who asserts qualified immunity. *Whitley v. Hanna*, 726 F.3d 631, 647 (5th Cir. 2013). Additionally, even if a plaintiff can establish a constitutional violation, the qualified immunity standard "gives ample room for mistaken

4

judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)). The Plaintiff carries the burden of demonstrating that qualified immunity is inappropriate. *Terwilliger v. Reyna*, 4 F.4th 270, 284 (5th Cir. 2021).

The Court will address each alleged constitutional violation claim in turn.

*False Arrest*

The Plaintiff's first claim is for false arrest, *i.e.*, that Mares arrested him without probable cause. For Morton to prevail on his false arrest claim, he "must sufficiently allege (1) that he was arrested, and (2) the arrest did not have the requisite probable cause." *Rhodes v. Prince*, 360 F. App'x 555, 558 (5th Cir. 2010) (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004)). Accordingly, to establish a constitutional violation of his Fourth Amendment right to be free from false arrest and unreasonable seizure, Morton must show there was no probable cause to arrest him. *Haggerty*, 391 F.3d at 655–56. If Morton's arrest was supported by probable cause, his claims fail under the Fourth Amendment.

The Supreme Court has made clear that establishing probable cause to arrest is a "low bar," and it exists when the "facts and circumstances within the officer's knowledge … are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Lockett v. New Orleans City*, 607 F.3d 992, 998 (5th Cir. 2010) (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001)). Notably, probable

cause exists for an arrest when there was probable cause to arrest for *any* offense, not just for the offense for which a person was actually arrested. *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) (holding "[t]he probable cause can be for any crime, not just the one the officer subjectively considered at the time.").

Nonetheless, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Mendenhall v. Riser*, 213 F.3d 226, 230, (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)) (other quotation marks and citations omitted). Thus, a plaintiff must allege facts permitting an inference the arresting officer lacked arguable (that is, reasonable but mistaken) probable cause for the arrest. See *Babb v. Dorman*, 33 F.3d 472, 478 (5th Cir.1994); *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir.2005).

Here, Morton was arrested and charged with two offenses: disorderly conduct and resisting arrest. The Court finds that probable cause existed for an arrest on both offenses, as well as for an additional offense for which he was not arrested or charged, as explained below.

As for the disorderly conduct charge, Mississippi's disorderly conduct statute states:

> Any person who shall enter any public place of business of any kind whatsoever, or upon the premises of such public place of business, or any other public place whatsoever, in the State of Mississippi, and while therein or thereon shall create a disturbance, or a breach of the peace, in any way whatsoever, including, but not restricted to, loud and offensive talk, the making of threats or attempting to intimidate, or **any other conduct which causes a disturbance or breach of the peace or threatened breach of the peace**, shall be guilty of a misdemeanor.

Miss. Code Ann. § 97-35-13 (emph. added).

The Mississippi Supreme Court has held that a refusal "to promptly comply with or obey a request, command, or order of" a law enforcement officer "constitute[s] a circumstance which may cause or occasion a breach of the peace," and thus provides probable cause for a disorderly

6

conduct arrest and charge. *S.M.K.S. v. Youth Court of Union County*, 155 So. 3d 747, 750 (Miss. 2015). Here, Morton's conduct clearly provided Mares with probable cause to arrest Morton for disorderly conduct. Morton admitted during his deposition that he refused to comply with Mares' request for Morton to exit his vehicle. [183-1, at p. 114]. This conduct alone provided Mares with probable cause to arrest Morton for disorderly conduct. *Price v. City of Natchez*, No. 5:23-cv-51-DCB-ASH, 2025 WL 1148454, at *5-*6 (S.D. Miss. Mar. 14, 2025).

As for the resisting arrest charge, Mississippi law makes it "unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his lawful arrest . . . by any state, local, or federal law enforcement officer." Miss. Code Ann. § 97-35-7. As with the disorderly conduct charge, Morton admits he resisted Mares' efforts to arrest him, stating he "wasn't going to let them" remove him from his vehicle and effect his arrest. [183-1, at pp. 114-116]. This admitted conduct gave Mares probable cause to arrest Morton on this additional charge. *Price*, 2025 WL 1148454, at *5 (holding that "further probable cause arose" when plaintiff resisted arrest).

As noted above, even if Mares did not possess probable cause to arrest Morton for either of the offenses Morton was charged with committing - disorderly conduct and resisting arrest - the Fifth Circuit has held probable cause exists for an arrest when there was probable cause to arrest for any offense, not just for the offense for which a person was actually arrested. *Davidson*, 848 F.3d at 395. Here, Morton's admitted refusal to exit his vehicle after Mares directed him to exit gave Mares probable cause to arrest him for failure to comply. Under Mississippi law, a person may be charged with failure to comply when he or she fails or refuses to "promptly comply or obey a request, command, or order of a law enforcement officer." Miss. Code Ann. § 97-35-7(1)(a). This charge includes a refusal to "move or absent himself and any vehicle or object subject

to his control from the immediate vicinity where the request, command, or order is given." *Id*. Morton does not deny he was told to exit the vehicle and refused to do so, and the video clearly demonstrates he did not exit voluntarily; this refusal to exit the vehicle after being ordered to do so gave Mares probable cause to arrest Morton for failure to comply. See, e.g., *Price*, 2025 WL 1148454, at *5-*6 (finding probable cause to support failure to comply charge and holding "a later decision by a court to dismiss the charge does not negate the presence of probable cause at the moment of arrest").

For all of these reasons, the Court finds that probable cause existed for Mares to arrest Morton, both for the offenses Morton was charged with committing and for failure to comply. Accordingly, Morton has not established a violation of a constitutional right, and his false arrest claim fails.

### *Malicious Prosecution*

Morton also asserts a claim for malicious prosecution. To establish this claim, Morton must establish the following elements:

1) the commencement of an original criminal proceeding;

2) the proceeding's commencement by the present Defendant;

3) the proceeding's bona fide termination in favor of the present Plaintiff;

4) the absence of probable cause for the proceeding;

5) malice; and

6) damages.

*Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023). In addition, a threshold initial element of a malicious prosecution claim is the Plaintiff must have been unlawfully seized as a result of the malicious prosecution. *Id*. at 278 (citing *Thompson v. Clark*, 596 U.S. 36, 42 (2022)).

More specifically, the Fifth Circuit has held that "[i]mportantly, because an unlawful seizure is the threshold element, if the prosecution is supported by probable cause on at least one charge, then a malicious prosecution claim cannot move forward."  *Armstrong*, 60 F.4th 262, at 279, n.15.  Here, because the court has already held that probable cause was present to support both charges, Morton's claim for malicious prosecution related to those two charges must be dismissed.  See, e.g., *Talley v. Jackson State Univ.*, No. 3:24-CV-296-TSL-ASH, 2024 WL 3717059, at *5 (S.D. Miss. Aug. 1, 2024) (dismissing malicious prosecution claim because probable cause existed to support charge for which plaintiff was arrested).

In sum, the existence of probable cause for Morton's arrest on the disorderly conduct and resisting arrest charges requires the Court to hold that both his false arrest and malicious prosecution claims fail.  The Court shall therefore grant the Defendant's motion for summary judgment and dismiss the Plaintiff's remaining claims.

**Conclusion**

For the reasons stated above, the Court finds that Defendant Ram Mares' Motion for Summary Judgment [178] should be granted, and the Plaintiff's remaining claims are dismissed.

An order in accordance with this opinion shall issue this day.

This, the ___2nd___ day of September, 2025.


_____
SENIOR U.S. DISTRICT JUDGE